Thompson, Associate Judge,
concurring in part and dissenting in part:
I agree with my colleagues’ conclusion that proof of the mens rea element of misdemeanor threats to do bodily harm under D.C. Code § 22-407 (2016 Supp.), or of felony threatening to injure the person of another under D.C. Code § 22-1810 (2016 Supp.),[1] requires more than evidence that the defendant intended to utter the words that constitute the threat. I also agree that proof that “the defendant acted with the purpose to threaten or with knowledge that his words would be perceived as a threat[,]” ante, at 317, 324, 325, will satisfy the mens rea required for conviction. However, I believe the opinion does not go far enough. I believe our court should conclude in addition that the mens rea element is satisfied if the defendant acted recklessly, i.e., uttered the words with conscious disregard of the substantial and unjustifiable risk that they would be perceived as a threat. I write separately to explain why I believe we should hold that recklessness is enough to satisfy the mens rea element (at least of § 22-407, if not § 22-1810).[2]
“A person acts recklessly with respect to a material element of an offense when he *331 consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.” Dorsey v. United States, 902 A.2d 107, 113 (D.C. 2006) (internal quotation marks omitted) (quoting Jones v. United States, 813 A.2d 220, 225 (D.C. 2002) (quoting Model Penal Code § 2.02 (2)(c) (Am. Law Inst. 1985))). “Recklessly means that the defendant was aware of and disregarded the grave risk ... created by his conduct.” Jones, 813 A.2d at 225. The Supreme Court has observed that “subjective recklessness as used in the criminal law is a familiar and workable standard!)]” Farmer v. Brennan, 511 U.S. 825, 839, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); see also id. at 837, 114 S.Ct. 1970 (Recklessness exists “when a person disregards a risk of harm of which he is aware.” (citations omitted)).
There are several reasons why I believe we should hold that recklessness is enough to satisfy the mens rea element of our threats statutes:
1. Reckless conduct is culpable, not innocent. The first reason follows from the Supreme Court’s explanation that when a court is interpreting a criminal statute that is “silent on the required mental state,” it is appropriate to “read into the statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct.” Elonis v. United States, — U.S. —, 135 S.Ct. 2001, 2010, 192 L.Ed.2d 1 (2015) (alteration in original) (internal quotation marks omitted). In his opinion concurring in part and dissenting in part in Elonis, Justice Alito explained eloquently why recklessness must be taken into account to separate wrongful from innocent conduct. He wrote:
There can be no real dispute that recklessness regarding a risk of serious harm is wrongful conduct.... Someone who acts recklessly with respect to conveying a threat necessarily grasps that he is not engaged in innocent conduct. He is not merely careless. He is aware that others could regard his statements as a threat, but he delivers them anyway.
Accordingly, I would hold that a defendant may be convicted under [the statute] if he or she consciously disregards the risk that the communication transmitted will be interpreted as a true threat.
Id. at 2015-16 (Alito, J., concurring in part and dissenting in part) (noting that “[n]othing in the Court’s non-committal opinion prevents lower courts from adopting [a recklessness] standard”); see also id. at 2014 (“[I]f recklessness is enough, and the jury is told [or the court instructs itself] that conviction requires proof of more, a guilty defendant may go free.”).
I can add little to Justice Alito’s succinct point, but I posit the following: consider (a) a person who utters words that he knows will be viewed as a threat by the ordinary hearer, but who also thinks, rightly or wrongly, that the target of his words will not view the words as threatening (a person who, on these facts, can be proven guilty of threats under the opinion of the en banc court); and (b) a person who, acting in conscious disregard of the substantial risk that his communication will be viewed as á threat by the ordinary hearer, utters the words anyway, simply not caring whether anyone will take the words as a serious threat. Is person (b) any less culpable than person (a)? It is clear to me that he is not (indeed, in my view, he is more culpable than person (a));[3] that a holding that recklessness is *332 enough to satisfy the mens rea element, of threats is necessary to separate person (b)’s conduct from innocent conduct; and that we therefore should construe our threats statutes to cover such wrongful conduct. Our laws prohibiting threats “ ‘protect[ ] individuals from the fear, of violence’ and ‘from the disruption that fear engenders,”’ Virginia v. Black, 538 U.S. 343, 360, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (quoting R.A.V. v. City of St. Paul, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)), and the fear that a threat may cause can be just as terrifying, crippling, and onerous when the threat is communicated recklessly as it is when the threat is communicated with the specific intent to threaten.
As Justice Alito recognized, “[i]n a wide variety of contexts, [the Supreme Court] ha[s] described reckless conduct as morally culpable.” Elonis, 135 S.Ct. at 2015 (Alito, J., concurring in part and dissenting in part); see, e.g., Smith v. Wade, 461 U.S. 30, 43 n.10, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (“[R]ecklessness is equivalent to intent, meaning that the two are equally culpable and deserving of punishment and deterrence.” (internal quotation marks omitted)); see also In re Cleaver-Bascombe, 892 A.2d 396, 414 (D.C. 2006) (Glickman, J., concurring in part and dissenting in part) (“Recklessness is a culpable mental state tantamount to ' actual knowledge and intent.”).
2. Recklessness suffices to' establish criminal liability. As the Supreme Court recognized in Voisine v. United States, — U.S. —, 136 S.Ct. 2272, 195 L.Ed.2d 736 (2016), the Model Penal Code has “taken the position that a mens rea of recklessness should generally suffice to establish criminal liability[.]” Id. at 2280 (noting that “a significant majority of jurisdictions — 34 [s]tates plus the District of Columbia— defíne[ ] [assault or battery] misdemeanor offenses to include the reckless infliction of bodily harm”). The courts in our jurisdiction have long signaled agreement with that- general principle. In Harris v. United States, 8 App. D.C. 20 (1896), for example, the court rejected voluntary intoxication as a defense to a homicide charge, declining to “condon[e] ... crime resulting from reckless habit” and observing that the offense was “committed under circumstances of ... malignant recklessness.”[4] Id. at 30, 31, In Peyton v. District of Columbia, 100 A.2d 36 (D.C. 1953), the court explained that an “exposure becomes indecent when the defendant exposes himself at such a time and place .., that it must be presumed that [“his exposed condition”] was intended to be seen by others” and held *333 that the requisite criminal intent for indecent exposure can “be inferred from the recklessness of defendant’s conduct in exposing himself.” Id. at 37 (footnotes omitted).
3. Our legislature, like those in several other jurisdictions, has signaled that recklessness is a sufficient mens rea. The brief of the United States informs us that several states have established recklessness as their default mens rea where a statute is silent.[5] Our legislature has not enacted such a default mens rea statute but has specifically provided in á number of statutes .that the requisite mens rea may be satisfied by recklessness.[6] Of particular note are the statutes in which the Council of the District of Columbia (the “Council”) has. incorporated a, recklessness standard in the elements of crimes that — like the threats statutes at issue in this case— involve threats to inflict injury, or conduct that puts another person in fear of harm. See D.C. Code § 22-1314.02 (a) (2012 Repl.) (making it generally unlawful for a person “to willfully or recklessly interfere with access to or from a medical facility or to willfully or recklessly disrupt the normal functioning of such facility,” such as *334 by “[threatening to inflict injury on the owners, agents, patients, employees, or property of the medical facility” (emphasis added)); D.C. Code § 22-1321 (a)(1) (2012 Repl.) (making it unlawful, “[i]n any place open to the general public, and in the communal areas of multi-unit housing, ... for a person to ... [ijntentionally or recklessly act in such a manner as to cause another person to he in reasonable fear that a person ... is likely to he harmed or taken” (emphasis added)); D.C. Code 22-2803 (a)(1) (2012 Repl.) (providing that a person “commits the offense of carjacking if, by any means, that person knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, .., shall take from another person immediate actual possession of a person’s motor vehicle” (emphasis added)); D.C. Code § 22-3312.02 (a)(4) (2012 Repl.) (making it unlawful to, inter alia, burn a cross or other religious symbol or to display a Nazi swastika or noose on any private premises “where it is probable that a reasonable person would perceive that the intent is ... [t]o cause another person to fear for his or her personal safety, or where it is probable that reasonable persons will be put in fear for their personal safety by the defendant’s actions, with reckless disregard for that probability” (emphasis added)); D.C. Code § 22-3312.03 (a)(3), (b)(4) (prohibiting any person over sixteen years of age, “while wearing any mask, hood, or device whereby any portion of the face is hidden, concealed, or covered as to conceal the identity of the wearer” from, inter alia, holding any meeting or demonstration “[w]ith the intent to cause another person to fear for his or her personal safety, or, where it is probable that reasonable persons will be put in fear for their personal safety by the defendant’s actions, with reckless disregard for that probability” (emphasis added)).[7]
In essence, through the foregoing statutes, the Council has already indicated that the public policy of the District of Columbia is that reckless conduct (including reckless expressive conduct) making it probable that other persons will be put in fear of injury is punishable under our criminal laws. Thus, construing our threats statutes to include recklessness as a sufficient mens rea “is justified by a well-established pattern in our criminal laws.” Elonis, 135 S.Ct. at 2014-15 (Alito, J., concurring in part and dissenting in part).
4. The history of our threats statutes and this court’s interpretation of them also provide some reason for not requiring a higher mens rea than recklessness. Mr. Carrell argues that an interpretation that the required mens rea is purpose to threaten, or knowledge that an utterance will be perceived as a threat, “more closely corresponds” to our case law (by which he means United States v. Baish, 460 A.2d 38 (D.C. 1983)). To the contrary, as the discussion below explains, construing the statutes to require only recklessness hews more closely to our case law that, construed the statutes to have no intent requirement (and to the Council’s apparent non-objection to that approach) and best avoids “stepping over the line”[8] that sepa *335 rates interpretation of our threats statutes from amendment of the statutes. Indeed, in light of the “putting in fear/threat to inflict injury” statutes cited above, in which the Council has provided that reckless disregard is enough for conviction, it seems likely that “to exclude [threats] committed with [a reckless] state of mind would substantially undermine”[9] the Council’s legislative scheme.[10]
Both our misdemeanor threats statute and our felony threats statute originated as congressional enactments, § 22-407 in 1912 and § 22-1810 in 1968. See ante, at 319, note 8, note 9. However, the Council amended the penalty language of both in 2013, as part of a broad effort to provide generally for proportionality between fines and imprisonment penalties for criminal offenses.[11] When the Council did so, it was “deemed to know the ... judicial gloss given to” the language of each statute and to have “adopt[ed] the existing interpretátion unless it affirmatively act[ed] to change the meaning.” Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 758-59 (11th Cir. 2010) (quoting Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist., 133 F.3d 816, 822 (11th Cir. 1998)).[12] At the time, although divisions of this court had earlier articulated competing formulations of whether general intent to utter the words that constitute the threat (or, instead, specific intent to utter the words as a threat) was required for conviction under our threats statutes, the state of the law was this: we had “resolve[d] the conflict”[13] between the competing formulations in a 1989 en banc decision in which we said that “[t]he plain language of D.C.’s felony threats prohibition [and thus its misdemeanor threats prohibition, the elements of which are the same] does not include any intent element.” Holt, 565 A.2d at 972. As Senior Judge Newman put it in the division decision in Carrell, Holt “vitiate[d] the contrary [1983] holding in Ba *336 ish,’’ Carrell, 80 A.3d at 170, i.e., that “the government must prove ... that the defendant intended to utter these words as a threat,” Baish, 460 A.2d at 42. There was also the precedent of Campbell v. United States, 450 A.2d 428, 431 n.5 (D.C. 1982) (citation omitted), stating that the mental state requirement of threats is “that the defendant intended to. utter the words which constituted the threat” (repeated in Evans v. United States, 779 A.2d 891, 894 (D.C. 2001), and Joiner-Die v. United States, 899 A.2d 762, 764 (D.C. 2006)), decisions that controlled per Thomas v. United States, 731 A.2d 415, 420 n.6 (D.C. 1999).
The landscape has now changed, of course; the division decision in Carrell was vacated in light of Elonis, and the general-intent guidance of Holt, Campbell, Evans, and Joiner-Die, has been superseded (or overruled). But the point of the preceding paragraph was to describe the state of our law at the time the Council amended the threats statutes in 2013 (modifying the penalty language). The Council did not venture at that time to describe more particularly the elements of the offense or to specify a mens rea. To be sure, “subsequent legislative actions [by the Council] do not carry interpretive weight equivalent to that accorded actions of the enacting body [Congress],” Holt, 565 A.2d at 975, and the Council’s 2013 amendments to the threats statutes pertained only to penalties, not to the elements of the offenses. So, I do not wish to overstate the point I am making. Still, the Council did not legislate in one broad stroke, but instead took care to exempt some statutes from its proportionality amendments, showing that some attention was given to each affected provision. “[A]ssum[ing] legislative awareness of the prior judicial interpretation” of our threats statutes, and “given the Council’s opportunity to revise the".'.. threats statute[s]” but its failure to do so, we have some additional basis to “conclude that the D.C. Council’s interpretation ... comported] with” this court’s en banc interpretation in Holt and in the Campbell line of decisions (or at the very least, that the Council was not alarmed by that interpretation and did not insist on the interpretation in Baish and its progeny). Holt, 565 A.2d at 975-76.
Having determined that we .must now construe our threats statutes to have a subjective mens rea element, the question we confront is the one Justice Alito framed: which mental state “[i]n the hierarchy of mental states that may be required as a condition for criminal liability” we should construe our statutes to require. Elonis, 135 S.Ct. at 2015 (Alito, J., concurring in part and dissenting in part). Justice Alito opined that the Elonis Court should stop at recklessness, “the mens rea just above negligence,” reasoning that “when Congress does not specify a mens rea in a criminal statute, we have no justification for inferring that anything more than recklessness is needed.” Id. (alteration in original) (observing that “[o]nce we have reached recklessness, we have gone as far as we can without stepping over the line that separates interpretation [of the statute] from amendment [of the statute]”). In light of this court’s historical interpretation of our threats statutes discussed above, I reach the same conclusion as to §§ 22-407 and -1810.
5. A recklessness standard may make a difference in case outcomes. It was suggested at oral argument that it may make very little difference to the outcome of cases under our threats statutes whether the government is required to prove that the defendant knew the ordinary hearer would view the utterance as a threat or instead must prove that the defendant knew that there was a substantial likelihood the hearer would do so — and, there *337 fore, that there is no compelling reason to hold that a mens rea of recklessness suffices for conviction. I am not so sure. The trial record in Elonis and the record in another recent case make me think that it sometimes will be easier to prove recklessness than the other culpable mental states.
In Elonis, the defendant testified that “he did not intend to make any threats.” United States v. Elonis, 841 F.3d 589, 595 (3d Cir. 2016). However, when asked about how he thought people might interpret his Facebook posts (posts that, inter alia, asked his wife whether the protection order she had obtained was “thick enough to stop a bullet,” warned that Elonis had “enough explosives to take care of the state police and the Sheriffs Department,” and- stated that Elonis had “had about enough” and was “making a name for him[self]” just before referring to “[ejnough elementary schools in a ten-mile radius to initiate the most heinous school shooting ever imagined”), Elonis responded, “You know, I didn’t really care about what other people thought,” Id. at 594-95. Similarly, in State v. Rund, 896 N.W.2d 527 (Minn. 2017), the defendant “admitted that he posted ... five threatening tweets” but “claimed that he did not make the threats with an intent to terrorize.” Id. at 530-31. However, he also “admitted that he posted the tweets recklessly, without regard to the risk of causing terror,” Id. at 531. In Elonis, the Third Circuit concluded that there, was “overwhelming evidence demonstrating beyond a reasonable doubt that [the defendant] knew the threatening nature of his communications,” 841 F.3d at 598,[14] and Rund entered a guilty plea, but it seems reasonable to think that such circumstances will not always exist. In some cases, the evidence that the defendant “didn’t really care about what other people thought” or “posted ... recklessly” might be the critical evidence supporting conviction.
6. The'issue of recklessness as the requisite mens rea has been fully briefed, and we should decide it now. Further, unlike the Supreme Court in Elonis, we have the benefit of substantial briefing by the parties and amici on the issue of whether a mens rea of recklessness suffices for conviction under §§ 22-407 and 22-1810. I believe we now have a “duty ... to say what the law is,” Elonis, 135 S.Ct. at 2014 (Alito, J., concurring in part and dissenting in part), so that our trial judges will have the benefit of Our analysis in deciding the many threats cases that come before them.
Notably, by my rough estimate (derived by looking at the numbers of reported cases from the federal circuit courts of appeals and our court), our trial court encounters threats cases with a great deal more frequency than their Article III federal-court counterparts. There are sixty-five published opinions of this court involving convictions under our threats statutes, compared to fewer than 400 reported cases from all of the federal circuits mentioning 18 U.S.C. § 875 (c), for an average of fewer than thirty-five cases per circuit. Thus, by my estimate, we are called upon to decide about twice as many threats (or attempted threats) cases as our federal appellate counterparts, and this does not include the many cases that we decide by unpublished memorandum opinions. This does not, of course, account for matters that come before our trial court but do not result in appeals to this court. The statistics suggest to me that our trial court *338 handles a significantly larger volume of threats cases than federal trial courts do. The federal circuit courts of appeals may have the luxury of waiting indefinitely for one of them to step forward and decide whether recklessness suffices for conviction under 18 U.S.C. § 875 (c), but my assessment is that we do not enjoy that luxury with respect to our threats statutes.
Further, although the United States disclaims an intent to prosecute future threats cases under a recklessness theory, both it and amicus DVLEAP urge us to interpret the threats statutes to require recklessness as the minimum mens rea, and Mr. Carrell and amicus Public Defender Services urge us to conclude that recklessness does not suffice. Thus, the issue has been squarely joined. Further, while we have not heard from the District of Columbia, we know (from S.W., for example) that it prosecutes juvenile offenders on charges of threats or attempted threats, and we cannot assume that it intends not to prosecute under a recklessness theory. However we decide the issue of whether recklessness suffices for conviction, we should reach the issue now.
7. The objective, actus reus element of threats sufficiently safeguards First Amendment rights. “It is settled that the Constitution does not protect true threats!,] [a]nd there are good reasons for that rule,” i.e., that “[t]rue threats inflict great harm and have little if any social value.” Elonis, 135 S.Ct. at 2016 (Alito, J., concurring in part and dissenting in part). But speech can be “a true threat and therefore unprotected under the Constitution [only] if an ordinary reasonable recipient who is familiar with the context of the statement would interpret it as a serious expression of an intent to cause a present or future harm.” S.W., 45 A.3d at 156 (internal quotations marks, footnotes, and brackets omitted). “[C]ourts have struck threats convictions on First Amendment grounds where facially threatening language placed in context cannot reasonably be perceived as a threat” and “have held that arrests based on statements that are not objectively threatening violate the First Amendment.” Id. at 156-57 (citations omitted).
The actus reus elements of threats — the objective test of whether “an ordinary reasonable recipient who is familiar with the context of the statement would interpret it as a serious expression of an intent to cause a present or future harm[,]” id. at 156 (internal quotation marks, brackets, and footnotes omitted) — “shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor,” or mere artistic expression. Elonis, 841 F.3d at 596-97; see also United States v. Jeffries, 692 F.3d 473, 480 (6th Cir. 2012) (The objective standard “winnows out protected speech because, instead of ignoring context, it forces jurors to examine the circumstances in which a statement is made.”). That being the case, I see no reason why we should not implement our threats statutes “to the fullest extent possible,” Blitz, 740 F.2d at 1246 (citation omitted), by recognizing that a true threat made recklessly, i.e., with awareness and conscious disregard of the substantial and unjustifiable risk that the words communicated will be perceived as a serious expression of an intent to do bodily injury, is punishable under our threats statutes. That is especially so given what amicus DVLEAP tells us are the “serious and long-lasting psychological and emotional consequences” of threats.
* *
For all the foregoing reasons, my view is that the en banc court should have reached *339 the issue and should hold that a defendant may be convicted under D.C. Code §§ 22-407 or -1810 if he consciously disregards a substantial and unjustifiable risk that his utterance will be perceived as a threat. In that we have not reached that conclusion, our trial judges should do so (and they remain free to do so) and should enter guilty verdicts (or instruct the jury of its duty to do so) when the evidence establishes beyond a reasonable doubt that the defendant recklessly communicated a threat, even if the evidence falls short of establishing that the defendant intended the communication as a threat or knew that it would be perceived as a threat.

. Other than language added to the penalty clause of each of the threats statutes in 2013, see infra n.ll, the language of each is the same as it was in January 2012, when Mr. Carrell's charged offenses occurred.

. I acknowledge this court’s statement in In re S.1V., that ‘‘[t]he basic elements [ofj felony and misdemeanor threats are the same.” 45 A.3d 151, 155 n.9 (D.C. 2012) ("We have interpreted the elements of this misdemeanor [D.C. Code § 22-507 (1973), recodified as D.C. Code § 22-407 (2001),] to be the same as those of its subsequently enacted felony counterpart, D.C. Code § 22-2307 (1973) [re-codified as D.C. Code § 22-1810 (2001)].” (alterations in original) (quoting United States v. Baish, 460 A.2d 38, 41 (D.C. 1983)) (citing United States v. Young, 376 A.2d 809 (D.C. 1977))). However, it is our felony threats statute (§ 22-1810), and not our misdemeanor threats statute, that was patterned after the federal threats statute (18 U.S.C. § 875 (c)). See Holt v. United States, 565 A.2d 970, 973-74 (D.C. 1989) (en banc). If we are concerned that the more severe penalties that follow a felony conviction should not be imposed for recklessly uttering a threat and likewise are reluctant to interpret § 22-1810 in a manner inconsistent with how the federal circuit courts of appeal may eventually interpret its federal counterpart, these may be reasons to reconsider our ruling that all of the elements of the misdemeanor and felony threats offenses — the mens rea element as well as the actus reus — are the same.

. Cf. Tison v. Arizona, 481 U.S. 137, 157, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) ("[S]ome nonintentional murderers may be among the most dangerous and inhumane of all[ ] — [ ]the *332 pe'rson who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of. the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim’s property. This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an ‘intent to kill.’ ”).

. Thus, the concept of recklessness as a basis for criminal liability had entered into the common law as it developed in our jurisdiction years before our misdemeanor threats statute was enacted in 1912. See Act of July 16, 1912, Pub. L. No. 62-226, ch. 235, § 2, 37 Stat. 192, 193.
“The crime of oral threats to do bodily harm was unknown to the common law[.]” Postell v. United States, 282 A.2d 551, 553 (D.C. 1971); see also, e.g., State v. Benedict, 11 Vt. 236, 237 (1839) (“Whatever was once thought upon the subject, it is now well settled, that mere threats, in words not written, is not an indictable offence at common law.”), (However, a statute enacted in 1901, now codified as D.C. Code § 22-404 (2016 Supp.), established a penalty for “[wjhoever ;.. threatens another in a menacing manner[.j” Act of Mar. 3, 1901, ch. 854, § 806, 31 Stat. 1189, 1322.)

. See, e.g., Kan. Stat. Ann. § 21-5202 (e) (2011 Supp.) ("If the definition of a crime does not prescribe a culpable mental state, but one is nevertheless required ..., ‘intent,’ ‘knowledge’ or ‘recklessness’ suffices to establish criminal responsibility.”); 18 Pa. Cons. Stat. § 302 (c) (LEXIS through 2017 Regular Sess. Acts 1-6, 8-9) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.”); Utah Code Ann. § 76-2-102 (Lex-isNexis 2012) ("[W]hen the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility.”); Tenn. Code Ann. § 39-11-301 (c) (2014) ("If the definition of án offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state.”); Tex. Penal Code Ann. § 6.02 (c) (West, Westlaw through 2017 Chapter 49) ("If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required ..., intent, knowledge, or recklessness suffices to establish criminal responsibility.”).

. See, e.g., D.C. Code § 22-404 (a)(2) (2012 Repl.) (prescribing penalties for “[w]hoever unlawfully assaults, or threatens another in a menacing manner, and intentionally, knowingly, or recklessly causes significant bodily injury to another” (emphasis added)); D.C. Code § 22-934 (2012 Repl.) (providing that "[a] person who knowingly, willfully or through a wanton, reckless or willful indifference fails to discharge a duty to provide care and services necessary to maintain the physical and mental health of a vulnerable adult, including but not limited to providing adequate food, clothing, medicine, shelter, supervision and medical services, that a reasonable person would deem essential for the well-being of the vulnerable adult is guilty of criminal . negligence” (emphasis added)); D.C. Code § 22-1006.01 (a)(5) (2012 Repl.) (establishing penalties to punish “any person who knowingly or recklessly permits [animal fighting] ,,. to be done on any premises under his or her ownership, or control, or who aids or abets that act” (emphasis added)); D.C. Code § 22-1101 (b)(1) (2012 Repl.) ("A person commits the crime of cruelty to children in the second degree if that person intentionally, knowingly, or recklessly .,. [m]altreats a child or engages in conduct which causes a grave risk of bodily injury to a child” (emphasis added)); D.C. Code § 22-1833 (1) (2012 Repl) (making it "unlawful for an individual or a business to recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, knowing, or in reckless disregard of the fact that .!. [c]oercion will be used or is being used to cause the person to provide labor or services or to engage in a commercial sex act” (emphasis added)); D.C. Code § 22-1834 (a) (2012 Repl.) (making it unlawful to recruit or maintain by any means a person "who will be caused as a result to engage in a commercial sex act knowing or in reckless disregard of the fact that the person has not attained the age of 18 years” (emphasis added)).

. Amicus Domestic Violence Legal Empowerment and Appeals Project ("DVLEAP”) informs us that a number of other jurisdictions have enacted threats statutes that specify a mens rea of recklessness or reckless disregard. E.g., Ala. Code § 13A-10-15 (2000); Conn. Gen. Stat. § 53a-62 (2017); Ga. Code Ann. § 6-11-37 (2016 Supp.); Haw. Rev. Stat. § 707-715 (2012 Repl); Minn. Stat. § 609.713 (1) (2015 Supp.); Mo. Rev. Stat. § 574.120 (2017); N.J. Stat. Ann. § 2C.12-3 (2002); 18 Pa. Cons. Stat. § 2706 (LEXIS through 2017 Regular Sess. Acts 1-6, 8-9); Wyo. Stat. Ann. § 6-2-505 (1982).

. Elonis, 135 S.Ct. at 2015 (Alito, J., concurring in part and dissenting in part).

. Voisine, 136 S.Ct. at 2278.

. This, it seems to me, is a sufficient response to my colleagues’ rule of lenity point. Ante, at note 22. See Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (citing United States v. Bass, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), for the principle that a "court should rely on lenity only if, after seizing every thing [sic] from which aid can be derived, it is left with an ambiguous statute”; observing that the Court has "declined to deem a statute ‘ambiguous’ for purposes of lenity merely because it was possible to articulate a construction more narrow than that urged by the Government”; and noting that "a division of judicial authority [is not] automatically sufficient to trigger lenity” (alteration in original) (internal quotation marks and brackets omitted)).

. See Criminal Fine Proportionality Amendment Act of 2012, D.C. Law 19-317, § 203 (b), 60 D.C. Reg. 2064, 2073, 2086 (Feb. 22, 2013).

. See also Miles v. Apex Marine Corp., 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 ll 990) ("We assume that Congress is aware of existing law when it passes legislation.” (citation omitted)); Cannon v. Univ. of Chicago, 441 U.S. 677, 696-98, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (“It is always appropriate to assume that our elected representatives ... know the law” and "that those representatives were aware of the prior interpretation of [the law] and that that interpretation reflects their intent with respect to [it].”); United States v. Bailey, 34 U.S. (9 Pet.) 238, 256, 9 L.Ed. 113 (1835) (“Congress must be presumed to have legislated under this known state of the laws .... ” (quoted in Voisine, 136 S.Ct. at 2280)); Blitz v. Donovan, 740 F.2d 1241, 1245 (D.C. Cir. 1984) ("Congress is deemed to know the ... judicial gloss given to certain language and thus adopts the existing interpretátion unless it affirmatively acts to change the meaning.” (alteration in original) (internal quotation marks omitted)).

. Carrell v. United States, 80 A.3d 163, 170 (D.C. 2013), reh'g en banc granted & op. vacated, 2015 WL 5725539, 2015 D.C. App. LEXIS 513 (July 15, 2015) (per curiam).

. The Third Circuit had no difficulty applying (though not adopting) a recklessness standard on remand in Elonis, 841 F.3d at 598. It concluded that "under either standard” — a recklessness standard or a knowledge standard — the District Court's error in instructing the jury under only an objective standard was harmless. Id.