*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1050**

State of Minnesota,
Appellant,

vs.

Paul Lewis Mason,
Respondent.

**Filed February 23, 2026
Reversed and remanded
Cochran, Judge**

St. Louis County District Court
File No. 69VI-CR-25-270

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kimberly J. Maki, St. Louis County Attorney, Aaron Welch, Assistant County Attorney, Virginia, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Evan Ottaviani, Assistant Public Defender, St. Paul, Minnesota (for respondent)

Considered and decided by Cochran, Presiding Judge; Frisch, Chief Judge; and Worke, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant State of Minnesota challenges the district court's imposition of a downward durational departure in sentencing respondent Paul Lewis Mason for his conviction of felony threats of violence. Because we conclude that the district court abused

its discretion when it sua sponte imposed a downward durational departure, we reverse and remand for resentencing consistent with this opinion.

## FACTS

In March 2025, police were dispatched to Mason's apartment after receiving a report from Mason's downstairs neighbor, C.W., that Mason had threatened C.W. with a weapon. At the apartment building, C.W. told police that Mason pointed a gun at him and threatened to kill him. Following the discussion with C.W., police located Mason and placed him under arrest. During a *Mirandized* interview, Mason told police that he was upset with C.W. for banging on Mason's walls and doors. Mason also told police that he went to C.W.'s apartment to confront C.W. and said: "[i]f you knock on my d--- door again, I'm beatin' your a--." But Mason denied he had a gun and also denied that he threatened to kill C.W. Upon being searched at the jail, police found 5.31 grams of methamphetamine on Mason's person.

The state charged Mason with three offenses: second-degree assault with a dangerous weapon in violation of Minnesota Statutes section 609.222, subdivision 1 (2024) (count I); felony threats of violence in violation of Minnesota Statutes section 609.713, subdivision 1 (2024) (count II); and fifth-degree felony drug possession in violation of Minnesota Statutes section 152.025, subdivision 2(1) (2024) (count III). The state later amended count III to fifth-degree gross misdemeanor drug possession pursuant to the plea agreement.

Under the negotiated plea agreement, Mason agreed to plead guilty to count II and count III as amended and the state agreed to dismiss count I. The state also agreed to abide

by the presentence investigation (PSI) report and follow the recommendations therein. In addition, the state agreed that Mason would receive credit for time served and that Mason could argue for a downward dispositional departure at sentencing if "for any reason he is a presumptive commit," but the state would oppose any such request. Lastly, the state agreed to a "bottom of the box" sentence, meaning the state would agree to the lowest end of the presumptive sentencing range under the Minnesota Sentencing Guidelines.

At the plea hearing, Mason pleaded guilty to count II and count III as amended. In support of his plea, Mason provided the following factual basis for the offenses which occurred on March 22, 2025. He testified that he and C.W. had been smoking methamphetamine that day and that they had "a disagreement." He further testified, consistent with his *Mirandized* statement to police, that he told C.W., "if you knock on my door again I'm going to . . . beat your a--." Mason claimed that his disagreement with C.W. arose out of C.W. "knocking on [Mason's] door and running off" but he denied "threaten[ing] to take [C.W.'s] life or anything like that." He also agreed that the police found methamphetamine on his person when he was arrested.

The district court accepted Mason's pleas, ordered a PSI, and set a sentencing date. The PSI indicated that the presumptive sentence for count II was a prison commitment for 24 months, with a guidelines range of 21 to 28 months.

Prior to the sentencing hearing, Mason moved for a downward *dispositional* departure on count II, seeking a probationary sentence. In his memorandum in support, Mason argued for the dispositional departure on the basis that "he is amenable to probation." Mason did not seek a downward durational departure.

The district court also received a victim impact statement from C.W. before the sentencing hearing. C.W. reiterated that Mason threatened to kill him while brandishing "what appeared to be a firearm." C.W. also noted that the incident was very stressful for him and that he has had trouble sleeping due to anxiety, but he "did not have any issues" with Mason before the incident, and "strongly [felt] this was a very isolated situation."

At the sentencing hearing, the district court heard from the parties' counsel and allowed Mason to address the court. Mason's counsel argued in favor of a probationary sentence. Mason's counsel also read a letter of support from Mason's wife in which she noted that "his absence is causing significant hardship for [their] family" and emphasized that the "family needs him home." When Mason addressed the court, he apologized for his conduct and expressed his remorse. The state opposed the motion, arguing that Mason had not met his burden to demonstrate facts sufficient to support a probationary sentence rather than the presumptive executed prison sentence.

After hearing from the parties, the district court denied Mason's motion for a downward dispositional departure on count II—felony threats of violence. In explaining its decision to commit Mason to prison, the district court stated that it was "sympathetic" to Mason and his family, but that it could not "make a finding that [Mason was] amenable to probation." The district court noted that the offense of threats of violence occurred when Mason was on supervised release. The court also emphasized that "this offense is serious," "[i]t had an effect on the victim," and "was completely avoidable." The district court went on to state that it did "see some mitigating factors," noting "it seems like this was an impulsive decision[,]" "probably . . . influenced by methamphetamine use," but the court

4

explained that the court "ha[d] to look at accountability." The district court then reiterated that it could not place Mason on probation because he was on supervised release when he committed the offense and he is "getting into the same trouble over and over."

But, following the denial of Mason's motion for a downward dispositional departure, the district court sua sponte ordered a downward durational departure on count II. The court provided the following brief explanation: "That being said, I will make the finding that there are mitigating factors. I'll depart durationally, but I think something has to change here, Mr. Mason, because this can't go on in the community." The district court then imposed a downward durational departure of three months from the agreed upon "bottom-of-the-box" sentence of 21 months, committing Mason "to the commissioner of corrections for a period of eighteen months" on count II. The court did not specify the "mitigating factors" that it was relying on to grant the downward durational departure for count II.[1] On count III as amended, the district court sentenced Mason to a concurrent sentence of 364 days in jail (or in prison) with credit for time served.

The state appeals the district court's imposition of a downward durational departure.

## DECISION

An appellate court "afford[s] the [district] court great discretion in the imposition of sentences and reverse[s] sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). "A district court abuses its discretion when its reasons for departure are improper or inadequate." *State v. Rund*,

---

[1] We also note that there does not appear to be a sentencing departure report in the record, though the sentencing order notes that the sentence was a downward durational departure.

5

896 N.W.2d 527, 532 (Minn. 2017). A district court also abuses its discretion when there is insufficient evidence in the record to justify the departure or if it fails to state the reasons for the departure on the record. *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016); *State v. Geller*, 665 N.W.2d 514, 517 (Minn. 2003). "When the district court gives improper or inadequate reasons for a *downward* departure, we may scrutinize the record to determine whether alternative grounds support the departure." *Solberg*, 882 N.W.2d at 623.

*Minnesota Sentencing Guidelines*

Before addressing the state's arguments, we begin with an overview of the Minnesota Sentencing Guidelines. The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses and seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2024). "Consequently, departures from the guidelines are discouraged and are intended to apply to a small number of cases." *Solberg*, 882 N.W.2d at 623. The sentencing guidelines provide that a district court may depart from the presumptive sentence only when there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (2024). And the sentencing guidelines require a district court granting a departure to "disclose in writing or on the record the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence." Minn. Sent'g Guidelines 2.D.1.c. The reasons must also be stated in either the sentencing order or in the departure report. *Id.*

6

The Minnesota Sentencing Guidelines include two types of sentencing departures: dispositional and durational. *Solberg*, 882 N.W.2d at 623. Dispositional departures "place[] the offender in a different setting than that called for by the presumptive guidelines sentence." *Id.* Dispositional departures typically focus on the characteristics of the offender that show whether a defendant is particularly amenable to probation. *Id.* Durational departures, by contrast, are sentences that depart in duration from the presumptive guidelines sentencing range. *Id.* Durational departures therefore "must be based on factors that reflect the seriousness of the *offense*, not the characteristics of the offender." *Id.* at 623-24 (citing *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995)). "A downward durational departure is justified only if the defendant's conduct was significantly less serious than that typically involved in the commission of the offense." *Id.* at 624 (quotation omitted). The Minnesota Sentencing Guidelines specify mitigating factors that may support a downward departure, either dispositional or durational. *See* Minn. Sent'g Guidelines 2.D.3.a (2024). Of those included in the guidelines, the parties identify three factors that are potentially relevant to our review:

> (1)　The victim was an aggressor in the incident.
>
> . . . .
>
> (3)　The offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants (drugs or alcohol) does not fall within the purview of this factor.
>
> . . . .

> (5)     Other substantial grounds exist that tend to excuse or mitigate the offender's culpability, although not amounting to a defense.

*Id.* The list of factors identified is nonexclusive. *Id.*

*The State's Argument*

The state argues that the district court abused its discretion when it granted a downward durational departure because it relied on "undefined" mitigating factors and did not "make any specific findings to justify a mitigated durational departure." Mason responds that the district court articulated sufficient reasons to support the departure.

At the sentencing hearing, the district court told the parties that it was "finding that there are mitigating factors" and imposed the downward durational departure. The district court did not clearly identify those "mitigating factors." But earlier, in its discussion of Mason's request for a downward dispositional departure, the district court stated that it "[saw] some mitigating factors and it seems like this was an impulsive decision." It is unclear from the transcript whether the district court was referring to impulsivity or some of the mitigating factors that it referenced in relation to Mason's request for a downward dispositional departure when it later stated that "there are mitigating factors" to support the downward durational departure.

We therefore conclude that the district court made inadequate findings to support the downward durational departure. As noted above, a "downward durational departure is justified only if the defendant's conduct was significantly less serious than that typically involved in the commission of the offense." *Solberg*, 882 N.W.2d at 624 (quotation

8

omitted).  The district court's reference to unspecified "mitigating factors" does not on its own support its decision to grant a downward durational departure.

We are not persuaded otherwise by Mason's argument that the district court's unspecified reference to "mitigating factors" was intended to refer to the district court's earlier statement that Mason made "an impulsive decision" and possibly to Mason's expression of remorse at the sentencing hearing.  As explained above, the record does not indicate whether the district court was setting forth these factors as bases for a downward durational departure.  While the district court clearly believed there were "mitigating factors" to support a downward durational departure, it did not specify any mitigating factors or identify sufficient evidence in the record to support the downward durational departure.  In other words, the district court did not find that Mason's threats-of-violence offense was less serious than the conduct typically involved in the offense of felony threats of violence.  And when the reasons given for the departure are inadequate, a district court abuses its discretion by imposing a departure.  *Rund*, 896 N.W.2d at 532.

We recognize that *Geller* provides that "absent a statement of the reasons for the sentencing departure placed on the record at the time of sentencing, no departure will be allowed."  665 N.W.2d at 517.  But *Geller* considered an upward departure, not a downward departure.  *Id.* at 515.  And while "we *may* independently examine the record to determine whether alternative grounds support the departure," we note that "may" is generally permissive.  *Rund*, 896 N.W.2d at 534 (emphasis added); *see The American Heritage Dictionary of the English Language* 1086 (5th ed. 2018) (defining "may" as "[t]o be allowed or permitted to").  Given the lack of clarity in the sentencing transcript regarding

9

the factors upon which the district court relied to grant the downward durational departure, we decline to exercise the option to independently examine the record and instead conclude that remand for resentencing is appropriate here to permit the district court to provide a more fulsome explanation of the basis for the departure.[2]  And we acknowledge that in some circumstances, impulsivity may demonstrate that an offense is less serious than the typical offense, but without clear findings on the record, we are unable to draw such a conclusion here.

We further note that a challenge in reviewing the record in this case is the lack of a departure report as required by the Minnesota Sentencing Guidelines.  *See* Minn. Sent'g Guidelines 2.D.1.c.  The guidelines require that the reasons for departure "be stated in the sentencing order or recorded in the departure report and filed with the Commission."  *Id.*  But "failure to file a departure report is not itself sufficient grounds for reversal."  *State v. Stempfley*, 900 N.W.2d 412, 417 n.8 (Minn. 2017).  Therefore, while our reversal is not based upon a failure to file a sentencing departure report, we note that a sentencing

---

[2] We recognize that, in *Rund*, the supreme court reversed and remanded for imposition of the presumptive sentence after it concluded that the reasons given by the district court were improper *and* it further concluded that the record contained "insufficient evidence to justify the departure."  896 N.W.2d at 529.  In addition, *Rund* states that "[r]eversal is required when the reasons given are improper or inadequate and the record contains insufficient evidence to justify the departure." *Id.* at 533 (emphasis added).  But here, unlike in *Rund*, we are declining to exercise our discretion to independently examine the record to determine whether the record contains insufficient evidence to support the departure.  Consequently, we do not read *Rund* to require reversal and remand for imposition of the presumptive sentence given there has been no determination that the record contains insufficient evidence to support the departure.

departure report would have given us the opportunity to more fully review the district court's findings on appeal.

In sum, while the record reflects that the district court clearly believed there were mitigating factors to support the downward durational departure, it failed to specify those factors on the record. We therefore reverse and remand for resentencing. On remand, the district court must make appropriate findings on the record to support its decision and file a sentencing report.

**Reversed and remanded.**