STATE OF MINNESOTA

IN SUPREME COURT

A15-0242

Court of Appeals

State of Minnesota,

      Respondent,

vs.

Jacob Miles Solberg,

      Appellant.

Chutich, J.
Took no part, Hudson, J.

Filed: July 27, 2016
Office of Appellate Courts

_____

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota; and

Gregory A. Widseth, Polk County Attorney, Scott A. Buhler, Assistant Polk County Attorney, Crookston, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.    A single mitigating factor may provide a substantial and compelling reason to impose a downward durational sentencing departure if the mitigating factor shows that the defendant's conduct in committing the offense of conviction is significantly less serious than that typically involved in the commission of the offense in question.

1

2.      When the defendant's expressions of remorse did not diminish the seriousness of his conduct in committing the offense of conviction, the district court erred by imposing a downward durational departure based solely on the defendant's remorse.

Affirmed.

O P I N I O N

CHUTICH, Justice.

Appellant Jacob Miles Solberg entered a *Norgaard* plea[1] to third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(c) (2014), claiming that his memory was affected by his state of intoxication when the offense occurred. The district court imposed a downward durational departure from the presumptive sentence, in part because Solberg expressed remorse for his actions. The State appealed, and the court of appeals reversed the district court's decision to impose a downward durational sentencing departure.

Solberg petitioned for review, arguing that a single mitigating factor—here, remorse—is sufficient to support a downward durational sentencing departure. We agree that a single mitigating factor may support a downward durational departure. But

---

[1]      A defendant may enter a *Norgaard* plea when he or she is unable to remember the specific facts of the offense because of intoxication or amnesia but is persuaded that he or she is likely to be convicted of the crime charged. *State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994); *State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 113-14, 110 N.W.2d 867, 872 (1961).

Solberg's expressions of remorse did not diminish the seriousness of his offense. Accordingly, we affirm the court of appeals' decision reversing Solberg's sentence.[2]

I.

In early June 2013, Solberg met the victim, a friend, at a street dance.[3] When the victim arrived, Solberg was heavily intoxicated, and he consumed at least two more drinks while at the dance. After about an hour and a half, Solberg told the victim that some of his friends were coming to his home and asked if she would accompany him there. She agreed, and Solberg drove her to his rural home. When they arrived, no one else was present, and they watched television on the living room couch. Solberg started rubbing the victim's back and legs, and she asked him to stop. He kept begging the victim to have sex with him even though she said no many times. When Solberg refused to stop rubbing her body, the victim stood up and asked Solberg to drive her back to her truck.

Solberg instead pushed the victim back onto the couch, put her hands over her head, and held her down. He pulled down her pants and penetrated her while she continued telling him to stop, and she began to cry. Because Solberg was much larger in

---

[2] On May 4, 2016, we issued an order, with written opinion to follow, affirming the court of appeals' decision and remanding this case to the district court to impose an executed sentence within the presumptive range.

[3] Because Solberg entered his *Norgaard* plea after the prosecution presented its case at trial, these facts are primarily from the victim's sworn testimony.

physical size than the victim,[4] she was unable to push him off. Solberg told her "it's ok" because "my doctor said I can't have kids" and "[i]t's not cheating if [our significant others] don't find out." According to the victim, Solberg was still intoxicated when he sexually assaulted her.

The victim reported the assault and underwent a sexual assault examination later that day. Law enforcement contacted Solberg, who gave a recorded statement. Solberg said that his memory was a "blur" because he had been intoxicated at the time of the alleged assault. He recalled having sexual intercourse, but he claimed that the sex was consensual and that he did not remember the victim crying. Solberg admitted that he "might've pressured her into it" but thought that she was playing "hard to get." He also said, "It wasn't my intention to hurt her like that emotionally. And I know she's probably scared."

Solberg was charged with third-degree criminal sexual conduct involving the "use[] of force or coercion to accomplish [sexual] penetration." Minn. Stat. § 609.344, subd. 1(c). He pleaded not guilty. During a jury trial, the State presented the testimony of the victim, her boyfriend, the nurse who conducted the sexual assault examination, and the police officers involved in the investigation. The State also played recorded statements given by the victim and Solberg during the investigation. After the State finished presenting its case, Solberg entered a *Norgaard* plea, claiming that (1) he could not admit the elements of the charged offense due to a loss of memory through

---

[4]     At the time of the offense, Solberg weighed about 270 pounds and was 6 feet tall, while the victim was much lighter and about 10 inches shorter.

4

intoxication and (2) he believed he was likely to be convicted of the crime charged. *See State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994) (describing *Norgaard* pleas).

Under the Minnesota Sentencing Guidelines, the presumptive sentencing range for Solberg's offense is imprisonment for 53 to 74 months.[5] Minn. Sent. Guidelines 4.B. Under the plea agreement, the State capped its sentencing recommendation at 53 months, the bottom of the presumptive sentencing range. Solberg later moved for a downward dispositional departure or, alternatively, a downward durational departure. He contended that a dispositional departure was justified by his young age, cooperation with law enforcement, low criminal history, and remorse. To demonstrate his remorse, he cited a psychosexual assessment, which reported that Solberg "acknowledged experiencing feelings [of] guilt at a clinically significant level."[6] Solberg also expressed remorse at the sentencing hearing, stating, "I know what I've done was wrong and it's been on me every single day. If there was anything I could do to make it better, I would. . . . I just wish I could go back in time and change what happened. I didn't mean for anything like that to happen."

The district court declined to impose a dispositional departure from the presumptive sentence of imprisonment, stating that Solberg "should go to prison like the guidelines say." The district court also concluded that Solberg's voluntary intoxication was not a mitigating factor that can support a sentencing departure. *See* Minn. Sent.

---

[5]     Solberg had a criminal history score of one when sentenced.

[6]     The presentence investigation report found, by contrast, that Solberg "took very little responsibility for his actions."

Guidelines 2.D.3.a.(3) (stating that "[t]he voluntary use of intoxicants" is not a factor that can be used to support a departure). But the court concluded that Solberg's young age, family support, cooperation with law enforcement, and remorse provided substantial reasons to depart from the presumptive sentence length. Thus, the court imposed a 30-month executed sentence, a downward durational departure from the presumptive range of 53 to 74 months.

The court of appeals reversed the downward durational departure. *State v. Solberg*, 869 N.W.2d 66 (Minn. App. 2015). First, the court of appeals concluded that all of the factors relied on by the district court, except for remorse, were relevant only to a dispositional departure, not a durational departure. *Id.* at 69. Second, the court of appeals held that Solberg's remorse did not support a durational departure because his remorse did "not 'relate back' to the offense or make [Solberg's] conduct less serious than the typical offense." *Id.* at 70. The court of appeals further concluded that, even if Solberg's remorse were a mitigating factor, existing case law did not allow a downward durational departure based on one mitigating factor alone. *See id.* at 69 n.3, 70. Solberg petitioned for review, contending that his remorse alone is sufficient to support the district court's decision to impose a downward durational sentencing departure.

II.

We review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn. 2003). A district court abuses its discretion when its reasons for departure are legally impermissible and insufficient evidence in the record justifies the departure. *See State v.*

6

*Edwards*, 774 N.W.2d 596, 601 (Minn. 2009). When the district court gives improper or inadequate reasons for a *downward* departure, we may scrutinize the record to determine whether alternative grounds support the departure. *See Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985). *But see State v. Jones*, 745 N.W.2d 845, 851 (Minn. 2008) (stating that a defendant has a right to fact-finding by a jury on aggravating factors that may support an *upward* departure).

The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses. Minn. Stat. § 244.09, subd. 5 (2014). The sentencing guidelines seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing" of felony crimes. *Id.* Consequently, departures from the guidelines are discouraged and are intended to apply to a small number of cases. *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002); *see also* Minn. Sent. Guidelines cmt. 2.D.301. A court may depart from the presumptive sentence only when there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent. Guidelines 2.D.1.

The Minnesota Sentencing Guidelines define two types of sentencing departures: dispositional and durational. A dispositional departure places the offender in a different setting than that called for by the presumptive guidelines sentence. *Id.* at 1.B.5.a. For example, a downward dispositional departure occurs when the presumptive guidelines sentence calls for imprisonment but the district court instead stays execution or imposition of the sentence. *Id.* at 1.B.5.a.(2). A dispositional departure typically focuses on characteristics of the defendant that show whether the defendant is "particularly suitable for individualized treatment in a probationary setting." *State v. Wright*, 310

7

N.W.2d 461, 462 (Minn. 1981); *see also State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (citing the "defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family" as relevant factors that may justify a dispositional departure).

By contrast, a durational departure is a sentence that departs in length from the presumptive guidelines range. Minn. Sent. Guidelines 1.B.5.b. A durational departure must be based on factors that reflect the seriousness of the *offense*, not the characteristics of the offender. *State v. Chaklos*, 528 N.W.2d 225, 228 (Minn. 1995). A downward durational departure is justified only if the defendant's conduct was "significantly less serious than that typically involved in the commission of the offense." *State v. Mattson*, 376 N.W.2d 413, 415 (Minn. 1985). The requirement that aggravating or mitigating factors must relate to the seriousness of the offense—and not to the characteristics of the offender—narrows the range of factors that may justify a durational departure.

The Minnesota Statutes and the sentencing guidelines provide a nonexclusive list of aggravating and mitigating factors that may support departures of both types. Minn. Stat. § 244.10, subd. 5a (2014); Minn. Sent. Guidelines 2.D.3. We have recognized aggravating and mitigating factors not listed in the statutes or guidelines, *see, e.g.*, *Wright*, 310 N.W.2d at 462 (holding that particular amenability to probation is a potential mitigating factor justifying a dispositional departure even though particular amenability to probation was not listed in the guidelines at the time), but the factor must still provide an "identifiable, substantial, and compelling" reason to depart from the presumptive sentence, Minn. Sent. Guidelines 2.D.1.

In this case, the court of appeals correctly held that three of the four mitigating factors relied on by the district court are relevant only to a dispositional departure, not a durational departure. *Solberg*, 869 N.W.2d at 69. Specifically, Solberg's age, family support, and cooperation with law enforcement are characteristics of the offender that relate to whether Solberg should be placed in prison; they are not characteristics of the offense that relate to whether Solberg should receive a shorter sentence. *See Trog*, 323 N.W.2d at 31. After the court of appeals properly rejected these three mitigating factors as justification for a downward durational departure, the only remaining factor to consider was Solberg's remorse.

Solberg contends that a single factor—in this case, remorse—may support a downward durational departure. The court of appeals rejected Solberg's argument, observing that the single-factor cases cited by Solberg involved *aggravating* factors, not mitigating factors. *Solberg*, 869 N.W.2d at 69 n.3.

It is true that we have affirmed upward durational departures that were based on a single aggravating factor. *See, e.g.*, *State v. Hicks*, 864 N.W.2d 153, 159 (Minn. 2015) (holding that concealment of a homicide victim's body, by itself, may support an upward durational departure); *State v. Lomax*, 437 N.W.2d 409, 410 (Minn. 1989) (holding that the repeat-offender aggravating factor, by itself, may support up to a double upward durational departure). That a single aggravating factor may, by itself, justify an upward durational departure is supported by the statute governing aggravated sentencing departures. The relevant subdivision specifically provides that "the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid based

9

on *any aggravating factor* arising from the same course of conduct." Minn. Stat. § 244.10, subd. 5a(b) (emphasis added). The singular form of the word "factor," combined with the word "any," confirms that a single factor may support a departure. *See The American Heritage Dictionary of the English Language* 81 (5th ed. 2011) (defining "any" in relevant part as "[o]ne, some, every, or all without specification").

Because nothing in the guidelines or our case law suggests that a district court should apply different standards when determining the appropriateness of an upward or downward departure, we hold that a single mitigating factor, standing alone, may justify a downward durational departure. *See* Minn. Sent. Guidelines 2.D.3 (stating that the following mitigating and aggravating factors are "a nonexclusive list of factors that may be used as reasons for departure"); *Trog*, 323 N.W.2d at 31 ("[J]ust as a defendant's particular unamenability to probation will justify departure in the form of an execution of a presumptively stayed sentence, a defendant's particular amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of execution of a presumptively executed sentence.").

As in all cases, however, the district court must find that the relevant single mitigating factor provides a substantial and compelling reason to depart from the presumptive guidelines sentence. Because the guidelines' goal is to create uniformity in sentencing, departures are justified only in exceptional cases.

III.

Having decided that a single mitigating factor may support a downward sentencing departure, we next consider whether Solberg's remorse alone supports a

downward durational departure in the present case. For the reasons discussed below, we conclude that it does not.

We have consistently treated remorse as a factor that may support a downward *dispositional* departure. *State v. Soto*, 855 N.W.2d 303, 311 (Minn. 2014). A primary justification for considering remorse in sentencing is that a defendant's remorse bears on his or her ability to be rehabilitated. *See* Heather Strang & Lawrence W. Sherman, *Repairing the Harm: Victims and Restorative Justice*, 2003 Utah L. Rev. 15, 28 ("[I]t appears that the expression of remorse and a genuine desire for reconciliation on the part of the offender is a significant predictor of offenders' desistance from future offending."). Thus, considering remorse in the context of dispositional departures is consistent with the principle that a district court may consider factors related to the offender—such as particular amenability to probation—when deciding whether to stay or to execute a sentence. *See Trog*, 323 N.W.2d at 31.

But, as discussed above, durational departures differ from dispositional departures. Durational departures must be based on the nature of the *offense*, not the individual characteristics of the offender. *Chaklos*, 528 N.W.2d at 228. Thus, a defendant's remorse generally does not bear on a decision to reduce the length of a sentence. *State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983) ("As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally . . . .").

To be sure, our past decisions do not entirely foreclose consideration of remorse in the context of durational departures. For example, in *State v. McGee*, the defendant

11

struck a pedestrian with his van and kept driving even after eyewitnesses tried to stop him. 347 N.W.2d 802, 804 (Minn. 1989). The pedestrian died at the scene. *Id.* Observing that the trial court imposed an upward durational sentencing departure, in part due to the defendant's lack of remorse, we explained that "[g]enerally, lack of remorse should not be a factor justifying a durational departure or one with respect to consecutive sentencing." *Id.* at 806 n.1. We acknowledged, however, that "there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *Id.* The logical inverse of such an acknowledgement is the possibility that cases may exist in which the defendant's remorse could relate back and be considered as evidence of remediation that makes the conduct significantly less serious than the typical conduct underlying the offense of conviction.

But we have suggested that showing the relevance of remorse to a durational departure will not be an easy task: a durational departure may be granted only if a defendant's remorse—or lack of remorse—bears on a determination of the cruelty or seriousness of the conduct on which the conviction was based. *See id.* In other words, unless a defendant can show that his demonstrated remorse is directly related to the criminal conduct at issue and made that conduct significantly less serious than the typical conduct underlying the offense of conviction, remorse cannot justify a downward *durational* departure.

In this case, the court of appeals expressed doubt that Solberg's remorse was genuine. *See Solberg*, 869 N.W.2d at 70 (stating that Solberg's assertion of remorse "is

12

not fully supported by the record" because he claimed to have no memory of the offense and he did not enter a plea until trial was well underway). But a district court "sits with a unique perspective on all stages of a case, including sentencing, and . . . is in the best position to evaluate the offender's conduct." *State v. Hough*, 585 N.W.2d 393, 397 (Minn. 1998). Accordingly, a district court is properly tasked with deciding whether a defendant's actions express genuine remorse and how much weight to give to that remorse. *See Soto*, 855 N.W.2d at 311 ("[W]hether Sotos' apology was genuine or should be given much weight were matters for the district court to decide.").

Even crediting Solberg's expressions of regret as genuine, however, the district court did not find, and our independent review of the record does not show, that Solberg's demonstrated remorse made his conduct significantly less serious than the typical conduct underlying the offense of conviction.[7] Solberg did not engage in any remorse-driven conduct that lessened the impact of the crime on the victim or made his crime any less serious than other third-degree criminal sexual assaults accomplished by coercion. Solberg's statements of regret during the investigation and the district court

---

[7] The State implies that Solberg's conduct was more serious than the typical offense because the victim testified that Solberg penetrated her both vaginally and anally. Subjecting a victim to different forms of penetration is an aggravating factor that can support an upward durational departure. *State v. Dietz*, 344 N.W.2d 386, 389 (Minn. 1984). But Solberg did not admit to multiple types of penetration or waive his right to a hearing on aggravating factors. *See Jones*, 745 N.W.2d at 851 (stating that a defendant is entitled to a jury determination of facts relevant to an aggravated sentence).

13

proceedings simply do not amount to "substantial and compelling circumstances" justifying a downward durational departure.[8]

Solberg also contends that his offense is less serious than the typical crime of third-degree criminal sexual conduct because he used coercion, not violence, to accomplish sexual penetration. Solberg is incorrect. While it is true that third-degree criminal sexual conduct covers a range of wrongful acts, including the use of threats or the infliction of bodily harm, a person also commits third-degree criminal sexual conduct when he "uses force *or coercion* to accomplish the penetration." Minn. Stat. § 609.344, subd. 1(c) (emphasis added). Solberg's use of his overwhelming physical size and strength to cause the victim to submit to penetration against her will fits squarely within the statute's prohibition of sexual assault by coercion. *See* Minn. Stat. § 609.341, subd. 14 (2014) (" 'Coercion' means the use by the actor of . . . superior size or strength, against the complainant that causes the complainant to submit to sexual penetration . . . against the complainant's will.").

---

[8]     At oral argument, the parties agreed that we could remand the case to the district court to consider a dispositional departure in lieu of a durational departure. But Solberg did not cross-appeal the separate issue of whether the district court should have imposed a dispositional departure. Because the court of appeals did not address the issue of whether a dispositional departure is warranted, we decline to reach it. *See In re Minnegasco*, 565 N.W.2d 706, 713 (Minn. 1997) (declining to address an issue that had not been raised before the court of appeals). Moreover, the parties did not address the issue in their briefs to this court. *See City of Duluth v. Cerveny*, 218 Minn. 511, 524, 16 N.W.2d 779, 786 (1944) (stating that we ordinarily do not consider issues not raised in briefing).

IV.

In conclusion, we hold that a single mitigating factor may provide a substantial and compelling reason to impose a downward durational sentencing departure if it shows that the defendant's conduct in committing the offense of conviction was significantly less serious than that typically involved in the commission of the offense in question. We further hold that remorse is not relevant to a downward durational departure unless the remorse somehow diminishes the seriousness of the offense. In the present case, a downward durational departure was not warranted because the record establishes that Solberg's remorse did not make the third-degree criminal sexual conduct less serious than the typical offense of third-degree criminal sexual conduct accomplished by coercion.

Affirmed.


HUDSON, J., took no part in the consideration or decision of this case.