*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1914**

State of Minnesota,
Respondent,

vs.

Roel Joseph Perez, Jr.,
Appellant.

**Filed September 30, 2024**
**Affirmed**
**Ede, Judge**

Ramsey County District Court
File No. 62-CR-23-4223

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Anna R. Light, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Ede, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this direct appeal challenging his 27-month executed sentence for a felony violation of a domestic-abuse no-contact order (DANCO), appellant argues that the district court abused its discretion by denying his motion for a downward dispositional departure.

Because we conclude that the district court did not abuse its discretion in imposing a presumptive sentence within the guidelines range for the convicted offense, we affirm.

**FACTS**

In July 2023, a DANCO prohibited appellant Roel Joseph Perez Jr. from having contact with his ex-girlfriend. Although Perez was aware of the DANCO and understood its terms, he had contact with his ex-girlfriend by speaking to and spending time with her. Perez did so despite knowing that he was violating the DANCO. Prior to this conduct, Perez had two prior domestic-violence-related convictions that qualified this offense to be charged as a felony.

Respondent State of Minnesota charged Perez with violating a DANCO under Minnesota Statutes section 629.75, subdivision 2(d)(1) (2022). Perez pleaded guilty to the charged offense. In exchange for Perez's guilty plea, the state agreed to dismiss two counts of first-degree burglary that were pending in a separate case. The district court informed Perez that it would defer acceptance of his guilty plea pending completion of a presentence investigation report (PSI).

In September 2023, a probation agent filed a PSI stating that Perez was serving an executed sentence for a probation violation. The PSI also reported that Perez had a criminal-history score of six and recommended a guidelines sentence of 30 months in prison.

Before the sentencing hearing, Perez moved for a "mitigated dispositional or durational departure." Among other things, Perez argued that he "suffered trauma as a child" and that "[i]ncarceration would pose a significant hardship to [his] family." He also

2

asserted that he struggles with mental-health disorders and substance abuse. Perez maintained that he "ha[d] exhibited a positive attitude throughout the pendency of these legal proceedings" and "ha[d] exhibited an outpouring of remorse for the instant offense, even if that remorse ha[d] been largely confined to the hearing of his defense team." He contended that "[h]is enthusiasm, insight, and diligence . . . help make him particularly amenable to probation." Perez asserted that he "has a strong work ethic and good employment history—factors not to be considered on their face—but factors demonstrative of a sense of responsibility, drive, and motivation that enhance his chances for success on probation." Finally, he argued that the offense was less serious than typical. In support of his motion, Perez submitted a letter from his mother and a memorandum completed by a dispositional advisor employed by the State of Minnesota Board of Public Defense.

At the sentencing hearing, the state opposed Perez's requests for downward durational and dispositional departures, arguing that Perez was already incarcerated after violating probation and receiving a downward dispositional departure in a prior case. The state cited Perez's history of probation violations and noted that, after "over ten attempts at chemical dependency treatment out of custody," Perez appeared to be particularly amenable to treatment only while incarcerated. The state recommended a guidelines sentence of 30 months in prison.

Defense counsel contended that a dispositional departure would grant Perez a "mechanism" to receive treatment "in a calculated custodial setting in the sentence that [he] already [had]." More specifically, Perez asked the district court to allow him to finish chemical-dependency treatment while serving a separate executed sentence for his

unrelated offense by granting him probation for his felony DANCO violation. In addition to pointing out that Perez was already seeking treatment, the defense maintained that he had "good family support" and that the combined effect of outpatient treatment with supervision by his probation officer would provide him a "safety-net" upon his release from prison. In the alternative, the defense asserted that "[a] durational departure in some way would be a better outcome."

During his allocution, Perez addressed the district court, expressed remorse for his past decisions, and pleaded for leniency, stating that his plan was "to continue in chemical treatment and address [his] mental health." Perez explained that he has two daughters and that his long-term goals were to "gain employment long enough to get [his] driver's license back . . . [a]nd transition back in[to] the construction trades."

The district court said that it reviewed the PSI and the parties' sentencing recommendations. Before pronouncing the sentence, the district court thanked Perez, stated that Perez's allocution "was very, very thoughtful," and specifically discussed its reasoning in denying Perez's downward durational and dispositional departure motions. After doing so, the district court imposed a 27-month executed sentence.

Perez appeals.

## DECISION

Perez challenges his 27-month executed sentence. He argues that the district court's "decision to send [him] to prison was an abuse of discretion because the record shows that [he] is particularly amenable to probation." Perez also contends that the district court's denial of his motion for a downward dispositional departure was against logic and the facts

4

in the record.[1] The state responds that "the district court considered the reasons for and against a departure—particularly [Perez's] experience with and need for chemical dependency treatment—and exercised its discretion by concluding that there were no substantial and compelling reasons to depart from the presumptive prison sentence." We agree with the state.

Appellate courts "afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). But this discretion is limited by the Minnesota Sentencing Guidelines, which "prescrib[e] a sentence or range of sentences that is presumed to be appropriate." *Id.* at 308 (quotation omitted). "The [district] court must pronounce a sentence of the applicable disposition, within the applicable prison range, and within the applicable length of stay, unless there exist identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (2022). "Only in a rare case will a reviewing court reverse the imposition of a presumptive sentence." *State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011).

"[A] downward dispositional departure occurs when the presumptive guidelines sentence calls for imprisonment but the district court instead stays execution or imposition of the sentence." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). "A dispositional departure typically focuses on characteristics of the defendant that show whether the defendant is particularly suitable for individualized treatment in a probationary setting."

---

[1] In this appeal, Perez does not challenge the district court's denial of his motion for a downward durational departure.

5

*Id.* (quotation omitted). "Numerous factors, including the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of his friends and/or family, are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982); *see also* Minn. Sent'g Guidelines 2.D.3 (2022). "A defendant's amenability to probation may by itself support a downward dispositional departure." *State v. Hickman*, 666 N.W.2d 729, 731-32 (Minn. App. 2003). "But the mere fact that a mitigating factor is present in a particular case does not obligate the [district] court to place [the] defendant on probation or impose a shorter term than the presumptive term." *Pegel*, 795 N.W.2d at 253-54 (quotation omitted). "A reviewing court may not interfere with the sentencing court's exercise of discretion, as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *Id.* at 255 (quotation omitted).

Here, after acknowledging Perez's allocution, the district court imposed an executed sentence of 27 months. "[A]ny sentence within the presumptive range for the convicted offense constitutes a presumptive sentence." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *rev. denied* (Minn. July 20, 2010). Based on Perez's undisputed criminal-history score of six and the uncontroverted severity level of four assigned to his DANCO violation, the presumptive range under the Minnesota Sentencing Guidelines is 26 to 36 months. *See* Minn. Sent'g Guidelines 4.A (2022). Thus, the 27-month executed sentence imposed by the district court was within the guidelines range for the offense of conviction and constitutes a presumptive sentence. *See Delk*, 781 N.W.2d at 428.

Perez insists that the district court's imposition of the presumptive sentence was an abuse of discretion. But the record reflects that the district court evaluated all the testimony and information presented before deciding to deny Perez's motion for a downward dispositional departure. The district court reviewed the PSI, Perez's five-page departure motion, and the supporting documents that Perez submitted. In addition, the district court listened to the arguments both Perez and his counsel presented at the sentencing hearing. And the district court thanked Perez for his allocution and stated that Perez's comments were "very, very thoughtful."

District courts need not put on the record the reasons for denying a departure motion. *State v. Johnson*, 831 N.W.2d 917, 926 (Minn. App. 2013) (citing *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985)), *rev. denied* (Minn. Sept. 17, 2013). Although it did not need to do so, the district court nonetheless explained the bases for its determination that Perez was not particularly amenable to treatment in a probationary setting. The district court noted that Perez's dispositional departure motion required "substantial and compelling reasons not to send [Perez] to presumptive prison but to place [him] on probation" and said that "unfortunately here, [the court could not] find that." The district court cited the PSI in stating that Perez had "ten prior attempts at treatment" and that, "given those prior treatment failures, [the court could not] find that putting [him] on probation and having [him] do treatment is a substantial and compelling reason to depart." Instead, the district court said that "it's probably just the opposite" and that "the best way for [Perez] to get sober is at [a] treatment program in the prison, not in a probationary

7

setting" because "[t]hose haven't worked in the past." Based on our careful review of the record, including the PSI, we conclude that the district court's reasoning is well supported.

Quoting *State v. Nelson*, 329 N.W.2d 827, 829 (Minn. 1983), Perez argues that his "apparent willingness to succeed in treatment is a ground for a dispositional departure in the form of a stay of execution of sentence." In support of this contention, Perez maintains that he "had the support of family" and that he "was remorseful, pleaded guilty within days of charging, and accepted responsibility." While that may be true, the Minnesota Supreme Court's holding in *Nelson* did not *require* the district court on remand to grant the defendant a downward dispositional departure because of the defendant's demonstrated desire to complete treatment. 329 N.W.2d at 829. Indeed, *Nelson* concerned the state's appeal of the district court's decision to grant a downward *durational* departure, which the supreme court overturned because the "[d]efendant's apparent willingness to succeed in treatment is not a ground for a downward durational departure any more than one's dangerousness can be used as a basis for an upward durational departure." *Id.* Rather than order the district court to substitute a downward dispositional departure for the downward durational departure it had erroneously imposed, the supreme court remanded for resentencing and held that "[o]n remand, . . . the [district] court ha[d] the *option* of placing the defendant on probation and imposing such conditions of probation as appear proper." *Id.* (emphasis added).

In contrast to Perez's reliance on *Nelson*, the state's citations to *State v. Brusven*, 327 N.W.2d 591, 593 (Minn. 1982), and *State v. Evenson*, 554 N.W.2d 409, 412 (Minn. App. 1996), are more persuasive. In *Brusven*, the supreme court "agree[d] with the state that . . . [the] case [did not] warrant[] a reversal of the refusal to depart dispositionally[,]"

8

despite the defendant "coming forward and admitting the misconduct and . . . [the defendant's] obvious feelings of guilt and his desire to succeed in treatment." 327 N.W.2d at 593. And in *Evenson*, this court concluded that, "[e]ven assuming [the defendant] is exceptionally amenable to treatment, his amenability does not dictate the result." 554 N.W.2d at 412.

The district court acknowledged Perez's struggles with chemical addiction, as well as his stated goals "to get back into construction" and "get back in [his] daughters' lives[.]" And the district court noted that "[c]hemical addiction is a horrific thing." But the district court ultimately acted well within its discretion in determining that accomplishing those goals required Perez to be sober, which in turn necessitated treatment in a custodial rather than probationary setting because Perez's previous attempts at community-based treatment had failed.

In sum, the district court carefully evaluated all the testimony and information presented and determined that there were no substantial and compelling reasons to depart from the sentencing guidelines. Thus, the district court's decision to impose a presumptive executed sentence was not against logic or the facts in the record, and we discern no abuse of discretion.

**Affirmed.**