*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-0830**

State of Minnesota,
Respondent,

vs.

Cass Howard Ellingboe,
Appellant.

**Filed April 28, 2025**
**Affirmed**
**Larkin, Judge**

Renville County District Court
File No. 65-CR-21-380

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kelsie J. Stahl, Renville County Attorney, Olivia, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schmidt, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction for unlawful possession of a firearm, arguing that his guilty plea was invalid because it lacked an adequate factual basis. Alternatively,

he argues that the district court abused its discretion by denying his motion for a downward dispositional departure.  We affirm.

## FACTS

In November 2021, respondent State of Minnesota charged appellant Cass Howard Ellingboe with unlawful possession of a firearm, unlawful possession of ammunition, introducing contraband into a correctional facility, fifth-degree controlled-substance possession, possession of a legend drug, and possession of drug paraphernalia.  According to the complaint, an officer observed two individuals slumped over the center console of a parked vehicle.  The officer knocked on the window to wake the driver, DS.  As DS opened the door, a glass smoking apparatus fell to the floor.  Law enforcement searched the vehicle and found, as relevant here, ammunition and two .22 caliber rifles.

In June 2023, Ellingboe entered a "straight plea" of guilty to the charge of unlawful possession of a firearm, with the understanding that he could argue for a downward-dispositional sentencing departure.  Ellingboe also submitted a signed plea petition.  In exchange for his plea, the state dismissed the remaining charges.

In setting forth a factual basis for his plea, Ellingboe was asked several leading questions by the district court and his attorney.  The district court asked Ellingboe if the ammunition recovered from the vehicle was his, and Ellingboe said no, though he acknowledged knowing that it was in the vehicle in a "locked box."  The district court asked Ellingboe if the vehicle was his, and he said no.

Defense counsel then took over the questioning and established the following factual basis using leading questions.  Ellingboe was in the vehicle with his significant

2

other, DS. The police found some .22 shells in the vehicle and two .22 rifles. The rifles belonged to DS's family. The Bureau of Criminal Apprehension (BCA) obtained a DNA sample from the stock of one of the rifles, and the police obtained a DNA sample from Ellingboe. Ellingboe's DNA sample matched the DNA obtained from rifle stock, and Ellingboe did not dispute the accuracy of the DNA comparison. Ellingboe admitted that he "constructively possessed" the rifle "through the fact that" his DNA was on it.

Ellingboe admitted that he was prohibited from possessing firearms because of prior convictions for "crimes of violence." The district court concluded that Ellingboe had put forth a sufficient factual basis, accepted his guilty plea, and continued the matter for sentencing.

Ellingboe moved the district court for a downward-dispositional sentencing departure. At sentencing, the district court acknowledged its receipt of Ellingboe's presentence-investigation report and accompanying sentencing worksheet, chemical-dependency evaluation and treatment reports, and a letter from Ellingboe's sister. The court heard arguments from Ellingboe's attorney, who asserted that Ellingboe had taken steps to address his chemical-use disorder. Ellingboe's attorney noted that Ellingboe had completed treatment and reenrolled in school. The court also heard from Ellingboe, who stated that he was trying to change his life for his new daughter. The state asked the district court to deny Ellingboe's departure motion, arguing that his extensive criminal history showed that he was not particularly amenable to probation.

After considering the filings, the presentence investigation, and the parties' arguments, the district court denied Ellingboe's motion for a departure, noting his

3

significant criminal history, which included 12 criminal history points for prior convictions. The district court sentenced Ellingboe to serve 60 months in prison, a presumptive sentence under the Minnesota Sentencing Guidelines.

Ellingboe appeals.[1]

## DECISION

## I.

Ellingboe seeks to withdraw his guilty plea, arguing that it was inaccurate because the factual basis did not establish that he possessed a firearm. A defendant need not move to withdraw a guilty plea in district court and may instead appeal directly from a judgment of conviction. *State v. Jones*, 7 N.W.3d 391, 399 (Minn. 2024); *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989).

A defendant does not have an absolute right to withdraw a guilty plea. *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). However, a constitutionally valid guilty plea "must be accurate, voluntary, and intelligent." *Id.* at 94. The validity of a guilty plea is a legal issue reviewed de novo. *Id.*

"The accuracy requirement protects a defendant from pleading guilty to a more serious offense than that for which he could be convicted if he insisted on his right to trial." *Id.* The accuracy of a plea "must be established on a proper factual basis." *Id.* A proper factual basis exists if there are "sufficient facts on the record to support a conclusion that

---

[1] The state did not file a brief, and we ordered that the appeal be determined on the merits under Minn. R. Civ. App. P. 142.03.

4

defendant's conduct falls within the charge to which he desires to plead guilty." *Kelsey v. State*, 214 N.W.2d 236, 237 (Minn. 1974).

Ellingboe pleaded guilty to unlawful possession of a firearm under Minn. Stat. § 624.713, subd. 1(2) (2020), which prohibits possession of a firearm by a person who has been convicted of a "crime of violence." The person must "knowingly" possess the firearm. *See State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017) ("To convict [a defendant] of possession of a firearm by an ineligible person, the [s]tate was required to prove in relevant part that he knowingly possessed the firearm.").

"Possession may be proved through evidence of actual or constructive possession." *Id.* During his plea, Ellingboe indicated that he did not "actually possess" the firearm. Thus, the question is whether his factual basis established that he constructively possessed it.[2] Constructive possession may be established in one of two ways. *Id.* The state must show either that the "police found the item in a place under the defendant's exclusive control to which other people normally did not have access" or that, if others had access, "there is a strong probability (inferable from other evidence) that at the time the defendant was consciously or knowingly exercising dominion and control over [the item]." *Id.*

Because the vehicle was not under Ellingboe's exclusive control, we consider whether Ellingboe's plea established a strong probability that he knowingly exercised dominion and control over the firearm. To do so, the state must prove more than the defendant's "mere proximity to the firearm." *Id.*

---

[2] Ellingboe does not dispute that he had a prior conviction for a crime of violence, making him ineligible to possess a firearm, or that a .22 rifle qualifies as a firearm.

5

The factual basis in this case was largely established through leading questions. The supreme court has "repeatedly discouraged the use of leading questions to establish a factual basis." *Jones*, 7 N.W.3d at 396. However, the use of leading questions, on its own, does not invalidate a plea. *Id.*; *Barnslater v. State*, 805 N.W.2d 910, 914 (Minn. App. 2011). Despite the use of leading questions, a reviewing court may determine that a factual basis is sufficient "in light of all surrounding circumstances and in the context of an entire plea colloquy." *Jones*, 7 N.W.3d at 396 (quotation omitted); *see also Raleigh*, 778 N.W.2d at 95-96 (concluding that a plea was accurate despite the use of leading questions).

Ellingboe expressly admitted the element of possession, specifically, constructive possession, and he acknowledged that his DNA was on the stock of the firearm, which indicates that he had held the weapon. Ellingboe's testimony, in the overall context of the plea hearing, provided a sufficient factual basis to establish that he knowingly exercised dominion and control over the firearm.

Ellingboe argues that "[o]ther than his DNA on the shoulder stock, no other facts were provided to form a factual basis for constructive possession." But Ellingboe expressly admitted to constructive possession of the weapon. And as previously stated, the fact that Ellingboe's DNA was on the stock indicates that he handled the weapon and creates a "strong probability" that Ellingboe knowingly exercised dominion and control over the firearm. *See Harris*, 895 N.W.2d at 601.

Ellingboe likens this case to *Harris*, in which the supreme court held that evidence produced at a trial was insufficient to sustain a conviction for unlawful possession of a firearm. *Id.* at 603. But in this case, we are reviewing the accuracy of a guilty plea, and

6

not whether evidence supports a guilty verdict after a trial. Different standards apply. More importantly, Ellingboe acknowledged that he constructively possessed the rifle and that his DNA was on the stock of the rifle. Such circumstances, namely, conclusive DNA evidence and an admission of possession, were not present in *Harris*. *See id.* at 603 ("As the [s]tate's expert conceded, approximately 25% of the general population could not be excluded as a source of the DNA found on the firearm.").

As the supreme court has explained, when assessing the accuracy of a guilty plea, a court must "make certain that facts exist from which the defendant's guilt of the crime charged *can be reasonably inferred*." *Nelson v. State*, 880 N.W.2d 852, 861 (Minn. 2016) (emphasis added) (quotation omitted). Given Ellingboe's admission that he constructively possessed one of the rifles, the fact that his DNA was on that rifle, and the fact that two rifles were found in a vehicle with two people, the factual basis establishes a strong probability that Ellingboe exercised dominion and control over the rifle that bore his DNA. Because Ellingboe's guilt can be reasonably inferred from his admitted facts, his guilty plea was accurate.

## II.

Ellingboe argues that the district court abused its discretion by denying his motion for a downward-dispositional sentencing departure because substantial and compelling circumstances justified a departure.

The Minnesota Sentencing Guidelines establish presumptive sentences for criminal offenses and seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2020). "Consequently, departures from the

guidelines are discouraged and are intended to apply to a small number of cases." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). A district court may depart from the presumptive sentence only when there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (Supp. 2021).

If substantial and compelling circumstances exist, the district court has broad discretion to depart, and we generally will not interfere with the exercise of that discretion. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). This court will reverse the district court's refusal to depart from the presumptive sentence only in a "rare" case. *Id.* We will not reverse the district court's refusal to depart "as long as the record shows the [district] court carefully evaluated all the testimony and information presented before making a determination." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted).

When considering a dispositional departure, the district court focuses "more on the defendant as an individual and on whether the presumptive sentence would be best for him and for society." *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). A defendant's particular amenability to probation can justify a downward dispositional departure from a presumptive sentence. *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014). The requirement of particular amenability ensures that "the defendant's amenability to probation distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure." *Id.* at 309 (quotation omitted).

Relevant factors for determining whether the defendant is particularly amenable to probation include the defendant's age, prior criminal record, remorse, cooperation, attitude in court, and support of friends and family. *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). Even if there is evidence that the defendant would be particularly amenable to probation, a district court is not required to grant a dispositional departure. *State v. Olson*, 765 N.W.2d 662, 664-65 (Minn. App. 2009).

In seeking a dispositional departure, Ellingboe primarily argued that his prior convictions were a result of his chemical use. He acknowledged having 13 prior criminal convictions since 2007 and three prior prison commitments during that time. Ellingboe explained that he sought chemical-dependency treatment after he survived an overdose in 2023 and learned that he was going to have a child. Ellingboe reported that following his overdose, he completed inpatient chemical-dependency treatment and then transitioned to outpatient treatment. Ellingboe also noted that he enrolled in college. He asserted that he was particularly amenable to probation given his remorse, post-offense rehabilitation, and success in chemical-dependency treatment.

Ellingboe argues that the district court abused its discretion by relying on "offense-related reasons and national issues with firearm control" as grounds for the denial. At sentencing, the district court stated that granting a departure would depreciate the "significance" of the charge because even if Ellingboe "handled these weapons minorly, the whole point is to keep people who have addiction problems and criminal problems away from weapons, because that's a dangerous factor and . . . that's the factor the [c]ourt

9

looks at, at this point." The district court later stated, "Given where we are with firearms in the country, granting you a departure at this point would not be appropriate."

We are not persuaded that the district court erred. When considering a dispositional departure, the district court may consider what is best for the defendant "*and for society*." *Heywood*, 338 N.W.2d at 244 (emphasis added). Moreover, the district court considered Ellingboe's individual circumstances and his amenability to probation, which were described in the relevant filings and arguments at sentencing, and the court emphasized Ellingboe's "significant criminal history." *See Pegel*, 795 N.W.2d at 255 (stating that a sentencing court does not abuse its discretion if it carefully evaluated the testimony and information presented before making its determination). The district court reasonably concluded that a departure was not warranted. This is not a "rare" case in which the district court abused its discretion by imposing a presumptive sentence.

**Affirmed.**