*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0232**

State of Minnesota,
Respondent,

vs.

Lee Daniel Kruger,
Appellant.

**Filed December 1, 2025**
**Affirmed**
**Harris, Judge**

Douglas County District Court
File No. 21-CR-24-124

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Chad M. Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent)

Anders J. Erickson, Johnson Erickson Criminal Defense, Minneapolis, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

In this direct appeal challenging his 67-month executed sentence for felony possession of child pornography, appellant argues that the district court abused its discretion by denying his motion for a downward dispositional departure because there

were substantial and compelling circumstances to support a departure, including his particular amenability to probation. Because the district court did not abuse its discretion when it imposed the presumptive guidelines sentence, we affirm.

**FACTS**

In January 2024, respondent State of Minnesota charged appellant Lee Daniel Kruger with three counts of felony possession of child pornography, in violation of Minnesota Statutes section 617.247, subdivision 4(b)(1)-(3) (2022). The complaint alleged that law enforcement identified numerous child-sex-abuse-material videos associated with Kruger's cellphone and cloud account.

Under a plea agreement, Kruger pleaded guilty to all three counts as charged in the complaint. As part of the resolution, the parties agreed that Kruger could argue for a downward dispositional departure at sentencing. If a sentence was executed, the state would not seek more than the bottom of the presumptive guideline sentencing range.

Kruger moved for a downward dispositional departure. He asserted that he was particularly amenable to probation and to a specific treatment program, was employed such that the circumstances that led to the offenses were unlikely to reoccur, was engaged in mental-health counseling, and had the support of family and friends. Kruger also filed six letters of support, submitted by his employer, wife, coworker, aunt and uncle, wife's friend, and his mother-in-law and father-in-law. Probation completed a presentence investigation (PSI), which recommended that the district court impose the presumptive sentence. It also included a victim-impact statement from an advocacy organization describing how Kruger's offenses affected Douglas County.

At sentencing, two therapists from Kruger's treatment program, N.S. and A.B., testified on his behalf. N.S. testified that Kruger had been participating in a weekly group for approximately eight months and believed that he could be successful. N.S. stated that Kruger "appears very empathetic towards his fellow group members and routinely offers support as well as suggestions or ideas to his fellow group members, and he also has done a really nice job in presenting assignments." N.S. believed that Kruger had "made progress in terms of getting more connected, [and] gaining more support for this issue."

A.B. testified that Kruger was referred to her after he reached out to the program seeking treatment, and that they had been meeting for individual therapy for approximately nine months. She described Kruger as "really engaged and motivated." She stated that Kruger has been open and honest about his compulsive sexual behaviors, and that she has seen progress in how Kruger reaches out to his support system and expresses his emotions. A.B. also noted that Kruger "has a lot of insight around [his compulsive sexual behaviors] and has now a clear kind of understanding of where he's been and the impact . . . that these behaviors have had . . . [and] where he wants to go from here."

Kruger acknowledged that his actions were wrong, and apologized "to the victims involved, to the public, to [his] family, and to everyone else." He described benefitting from his treatment and his weekly meetings, and that he is "learning to open up and communicate with everyone honestly." He described his relationships with his sponsor, wife, employer, friends, and family and promised to "do everything in [his] power by working on [his] mental health, support systems, professional and personal life, [and] to never be [in court] again."

Kruger's attorney argued that the district court should grant the motion for a dispositional departure because Kruger was particularly amenable to an individualized treatment program as he sought treatment before being charged, made substantial progress, and was projected to successfully complete the program. He also noted that Kruger successfully completed probation in the past with no violations, took responsibility for all charges in the complaint despite the impact on his criminal-history score, had community support, and was "very up front with his employer, [and] with his family members, about his struggles with sexual addiction." Kruger's attorney further argued that the district court should analyze Kruger's case as analogous to other addictions, such as drugs or alcohol, and noted that research "shows a difference between those individuals that are doing this type of offending online and possessing these works [and] those individuals that are reaching out to individuals . . . that are real, and gaining information, or trying to solicit minors."

The state opposed the departure and requested that the district court impose the presumptive 67-month executed sentence on count three, followed by a 15-year conditional-release period. The state argued there were no substantial and compelling reasons to depart, highlighting Kruger's "history of having previously been convicted for the same crime."

After reviewing the record and listening to the testimony and arguments, the district court denied Kruger's motion. The district court determined that there were no substantial and compelling reasons for departure, finding that (1) probation did not support a departure; (2) the legislature intended to punish possession of pornographic work involving

4

minors and intended to punish subsequent offenses more seriously; (3) Kruger "relapsed and reoffended in the not too distant future"; and (4) based on the PSI, "it was an intentional course of conduct, and [Kruger] w[as] aware that there were potential consequences."

Consistent with the plea agreement, the district court sentenced Kruger to an executed sentence of 67 months, the minimum guidelines sentence. At the request of Kruger, the district court executed the presumptive stayed guidelines sentences on counts one and two, which allowed all three sentences to be served concurrently.

Kruger appeals.

### DECISION

Kruger argues that the district court abused its discretion by denying his motion for a downward dispositional departure and by imposing the executed guidelines sentence because there were substantial and compelling reasons for a probationary sentence, namely that he is particularly amenable to treatment.

The Minnesota Sentencing Guidelines prescribe a sentence or range of sentences that is "presumed to be appropriate." Minn. Sent'g Guidelines 2.D.1 (2022); *see also State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (citing this provision of the sentencing guidelines). The sentencing guidelines also provide for dispositional and durational sentencing departures. *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). As relevant here, a downward dispositional departure is "when the presumptive guidelines sentence calls for imprisonment but the district court instead stays execution or imposition of the sentence." *Id.*

5

We review the district court's denial of a motion for a downward departure for an abuse of discretion. *Id.* Generally, we will not disturb the district court's decision to impose a presumptive guidelines sentence. *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *rev. denied* (Minn. July 20, 2010). We will uphold the district court's sentencing decision if the record shows that the district court carefully evaluated all of the information and testimony before making its decision. *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011); *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. App. 1985).

The district court may only depart from the guidelines sentence if there are substantial and compelling reasons to do so. *Soto*, 855 N.W.2d at 308; *see also* Minn. Sent'g Guidelines 2.D.1. "Substantial and compelling circumstances are those circumstances that make the facts of a particular case different from a typical case." *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). But departures are discouraged, as the "sentencing guidelines seek to 'maintain uniformity, proportionality, rationality, and predictability in sentencing' of felony crimes." *Solberg*, 882 N.W.2d at 623 (quoting Minn. Stat. § 244.09, subd. 5 (2014)); *see State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008) ("To maintain uniformity and proportionality, departures from the presumptive guidelines sentence are discouraged.").

The sentencing guidelines contain a "nonexclusive list" of factors that the district court may consider as reasons for a departure. Minn. Sent'g Guidelines cmt. 2.D.203 (2022). One mitigating factor that may provide a substantial and compelling reason for a downward dispositional departure is the defendant's particular amenability to probation. *See State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) ("A defendant's particular

6

amenability to probation justifies a district court's decision to stay the execution of a presumptively executed sentence."); *see also* Minn. Sent'g Guidelines 2.D.3.a(7) (2022). A defendant's particular amenability to probation can be demonstrated by factors such as the defendant's age, prior record, remorse, cooperation while in court, and the support of friends and family (*Trog* factors). *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). "[M]erely being amenable to probation—as opposed to being *particularly* amenable to probation"—does not justify a departure. *Soto*, 855 N.W.2d at 308.

First, Kruger argues that the district court abused its discretion because it failed to consider all of the *Trog* factors. We are unpersuaded.

The district court need not address all the *Trog* factors on the record before denying a departure motion and imposing the presumptive guidelines sentence. *Pegel*, 795 N.W.2d at 254. Here, the district court considered some of the *Trog* factors on the record, including Kruger's prior record and support of family and friends, but elected to impose the guidelines sentence. This was a proper exercise of its discretion because, even if a district court finds the existence of one or more *Trog* factors based on the record, the district court is not required to depart from the guidelines sentence. *See Wells v. State*, 839 N.W.2d 775, 781 (Minn. App. 2013) (stating that district court has discretion to impose presumptive sentence when *Trog* factors supporting a probationary sentence are present), *rev. denied* (Minn. Feb. 18, 2014); *Pegel*, 795 N.W.2d at 253-54 (stating that district court is not required to grant departure, even if mitigating circumstances are present).

Second, Kruger argues that the district court abused its discretion because it "erroneously interpreted the child pornography statute . . . as directing district courts to

deny dispositional departure requests for repeat offenders." This argument is not supported by the record.

The record establishes that the district court did not conclude that it was prevented from departing. Instead, it inferred from the language of the statute that Kruger's offense was a victim-based offense, that the legislature intended to punish possession of child pornography, and that the legislature intended to punish subsequent offenses more severely. The district court considered these inferences alongside evidence in the record, such as Kruger's criminal history—which resulted in a presumptive 67-month executed sentence—and his counsel's argument that possession of child pornography should be treated similarly to offenses related to other addictions. On this record, the district court did not abuse its discretion when it determined that "given the legislature's intent that consequences are to increase on subsequent offenses, I really don't find anything atypical about this situation."

Lastly, Kruger disagrees with how the district court weighed some of the evidence. He argues that the district court improperly weighed his statement in the PSI about his reasons for reoffending and relied too heavily on his prior child-pornography offense and "probation's unexplained recommendation for a prison sentence." These arguments are unavailing.

The record demonstrates that the district court carefully evaluated the evidence. After hearing from Kruger, the state, and the witnesses who testified on Kruger's behalf, and after reviewing the documents in the record, the district court acknowledged that Kruger's attorney made "a good and valid argument," that Kruger was amenable to

8

probation, and that there would be an impact to Kruger's wife, family, friends, and coworkers. But the district court also considered Kruger's stated reasons for reoffending, his relapse after completing treatment, and probation's recommendation. It then concluded that Kruger's case was not atypical and that he was not *particularly* amendable to treatment. *See Soto*, 855 N.W.2d at 309 ("By requiring a defendant to be *particularly* amenable to probation, therefore, we ensure that the defendant's amenability to probation distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure.").

While the record demonstrates that several mitigating factors were present, including Kruger's remorse, cooperation, community support, and engagement in treatment, this did not prevent the district court from imposing the guidelines sentence. *State v. Olson*, 765 N.W.2d 662, 664-65 (Minn. App. 2009). And "the record demonstrates that the district court carefully considered circumstances for and against departure and deliberately exercised its discretion" *Pegel*, 795 N.W.2d at 255. Under these circumstances, we do not reweigh the evidence and interfere with the district court's deliberate exercise of its "great discretion in the imposition of sentences." *Soto*, 855 N.W.2d at 307 (quotation omitted); *see also Bertsch*, 707 N.W.2d at 668 (holding that district court acted within its discretion when it denied dispositional departure, noting probation department recommended executed sentence and district court's decision was supported by the record).

In sum, our careful review of the record shows that the district court evaluated the information and evidence presented at sentencing and properly exercised its discretion

9

when it denied Kruger's motion for a downward dispositional departure and imposed the minimum presumptive guidelines sentence.

**Affirmed.**